FILED
2015 Jan-06  PM 04:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| TAMMY WHITEHURST, | ) | |
| | ) | |
| Plaintiff; | ) | |
| | ) | |
| vs. | ) | 6:14-cv-01602-LSC |
| | ) | |
| SHERIFF RICK HARRIS, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## Memorandum of Opinion

Before the Court are Defendants Rick Harris, Wes Brown, Keith Concord, Shawn Kelley, Tommy Hood, Joey Darty, Eric Oliver, Mitchell Jones, Jeremy Lockhart, and David Mize's motions to dismiss Plaintiff Tammy Whitehurst's first amended complaint for failure to state a claim. (Docs. 12, 14, 22.) All Defendants raise the defense of qualified immunity, and Defendants Brown, Harris, Kelley, and Concord have filed a motion to stay this matter pending resolution of potential state criminal proceedings. (Doc. 23.) The issues have been fully briefed and are ripe for review. For the reasons stated below, the motions are due to be granted in part and denied in part for the claims against Concord and the Jasper Officers, and granted for all claims against Brown, Harris, and Kelley. The motion to stay is due to be denied.

## I.   BACKGROUND[1]

Plaintiff Tammy Whitehurst ("Whitehurst") brings this action under 42 U.S.C. § 1983 after members of the Winston County Sheriff's Office and the Jasper Police Department executed a search warrant at her home. Defendant Rick Harris ("Harris") is Sheriff of Winston County, Wes Brown ("Brown") is a narcotics investigator with the Winston County Sheriff's Office, and Keith Concord ("Concord") and Shawn Kelley ("Kelley") are sheriff's deputies. Defendants Joey Darty ("Darty"), Tommy Hood ("Hood"), Eric Oliver ("Oliver"), Mitchell Jones ("Jones"), Jeremy Lockhart ("Lockhart"), and David Mize ("Mize") are employed by the Jasper Police Department, and were members of the Jasper Critical Response Team (collectively the "Jasper Officers") that participated in the search of Whitehurst's home.

Whitehurst lived in a mobile home in Haleyville, Alabama. Whitehurst's brother, David Scruggs ("Scruggs") lived in neighboring mobile home approximately 350 feet away from Whitehurst's trailer. The address for Whitehurst's mobile home was 11755 Highway 13, Haleyville Alabama, while Scruggs's home was located at

---

[1] For purposes of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court treats facts alleged in the complaint as true and construes them in the Plaintiff's favor. *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1215 (11th Cir. 2012).

11751. The Winston County Sheriff's Office suspected Scruggs of trafficking marijuana and receiving stolen property. Before a search warrant was obtained, Defendants Brown and Kelley visited Whitehurst at her home. Whitehurst told Brown and Kelley that Scruggs was spending nights at her home, as the power to Scruggs's neighboring trailer had recently been disconnected due to non-payment of the bill.

On August 16, 2012, Brown obtained a warrant authorizing a search of the residence at 11751 Highway 13, which is the location of Scruggs's mobile home rather than Whitehurst's. The warrant authorized seizure of evidence related to Scruggs's suspected crimes; a separate arrest warrant for Scruggs was also issued. In addition to including the address, the search warrant described the location to be searched as a "tan manufactured home at the end of the road." (Doc. 13-1, at 7.)

On August 17, 2012, Defendant Concord and the Jasper Officers used the warrant to search Whitehurst's mobile home. Defendants broke down the door, entered the mobile home with their guns drawn, and shouted at the occupants of the home to "get down on the floor." Defendant Darty shot Whitehurst's two dogs—a male and a female pit bull terrier—when the dogs attacked following Concord and the Jasper Officers' entry into the home. The female pit bull died as a result of the gunshot wounds. The dog had recently birthed a litter of puppies, some of which died

soon after due to their inability to nurse. The male pit bull survived. Whitehurst's children were also present at the time the warrant was executed, and Whitehurst says that one of the bullets discharged during the dog attack came close to striking one of her children. Whitehurst's hands were cuffed with a zip tie and she was ordered to remain on the kitchen floor while Concord and the Jasper Officers searched the home for Scruggs and the items listed in the warrant. Defendants seized eight cellular phones from the residence.

Whitehurst filed this action on August 16, 2014, alleging that her Fourth Amendment rights were violated when Defendants searched her home without a warrant. Whitehurst also brings claims against Harris and Brown under a theory of supervisory liability, and asserts a claim against all Defendants for "failing to intervene" to stop the alleged Fourth Amendment violations. All Defendants have asserted the defense of qualified immunity. In addition, Brown, Harris, Concord, and Kelley have requested that the Court stay Whitehurst's § 1983 suit until the state court hears potential challenges to the warrant as part of Scruggs's criminal proceedings. Whitehurst has amended her complaint once as a matter of course pursuant to Fed. R. Civ. P. 15(a).

## II.  STANDARD OF REVIEW

Rule 8(a) of the Federal Rules of Civil Procedure requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleading must also contain a "demand for the relief sought, which may include relief in the alternative or different types of relief."

"Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009). Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 678 (internal quotations omitted). *Iqbal* establishes a two-step process for evaluating a complaint. First, the Court must "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* Factual allegations in a complaint need not be detailed, but they "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In reviewing the complaint, the Court must "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950. The Court must consider the "face of the complaint and attachments thereto" to determine whether the Plaintiff states a claim for relief.[2] *Starship Enterprises of Atlanta, Inc. v. Coweta Cnty., Ga.*, 708 F.3d 1243, 1253 n.13 (11th Cir. 2013). A plaintiff need not plead each element of the cause of action but must plead "enough information regarding the material elements of a cause of action to support recovery under some viable legal theory." *Am. Fed'n of Labor & Cong. of Indus. Orgs. v. City of Miami, Fla.*, 637 F.3d 1178, 1186 (11th Cir. 2011) (internal quotations omitted).

## III.  DISCUSSION

### A.    Unlawful Search Claim Against Concord and the Jasper Officers

Whitehurst argues that Defendants violated the Fourth Amendment's prohibition on unreasonable searches and seizures when Defendants (1) used a warrant issued for another residence to search Whitehurst's home, in effect making the search warrantless; and (2) failed to knock and announce their presence before

---

[2] In addition, this Court may consider the contents of the actual search warrant (submitted by Defendants), even at the 12(b)(6) stage, since Whitehurst references the warrant's contents in her complaint, the warrant is central to her claims, and the parties do not dispute the actual content of the warrant. *See Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (stating that a court may consider documents attached solely to a motion to dismiss when the "plaintiff refers to [the] document in its complaint, the document is central to its claim, [and] its contents are not in dispute").

entering the home. The Court first considers the Fourth Amendment claims against Concord and the Jasper Officers, since they were the only Defendants present when the warrant was executed.

### 1.    *Whitehurst's Home Searched Without a Warrant*

Whitehurst argues her Fourth Amendment rights were violated when Defendants searched her home without a search warrant. The Fourth Amendment guarantees the right for people "to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Searches of homes made without a warrant are *per se* unreasonable. *See Payton v. New York*, 445 U.S. 573, 586 (1980) (stating that it is a "basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable" (internal quotations omitted)). However, an incorrect address in a search warrant will not automatically invalidate that warrant. *See United States v. Burke*, 784 F.2d 1090, 1092 (11th Cir. 1986) (stating that "[a]n erroneous description of the premises to be searched does not necessarily render a warrant invalid"). A search warrant listing an incorrect street address is nonetheless valid if the warrant describes the location to be searched with "sufficient particularity" so as to allow officers to correctly identify the home to be searched. *See id.* ("A warrant's

description of the place to be searched is not required to meet the specificity sought by conveyancers. . . . The Fourth Amendment requires only that the search warrant describe the premises in such a way that the searching officer may with reasonable certainty ascertain and identify the place intended." (Internal quotations omitted) (citing *United States v. Weinstein*, 762 F.2d 1522, 1532 (11th Cir. 1985))).

With respect to Defendants Concord and the Jasper Officers, Whitehurst has pled sufficient facts to state a plausible violation of her Fourth Amendment right to be free from unreasonable searches. Whitehurst effectively alleges that her home was searched without a warrant. Whitehurst has pled that a warrant was obtained for Scruggs's mobile home at 11751 Highway 13, but instead executed on her mobile home at 11755 Highway 13, thus amounting to a warrantless search of her residence.

In response, Defendants assert that the warrant was meant for Whitehurst's home. Defendants argue that the listing of Scruggs's address in the warrant was a careless error, and that the warrant nonetheless described Whitehurst's home with sufficient particularity when it listed the location to be searched as a "tan manufactured home at the end of the road." *See Maughon v. Bibb Cnty.*, 160 F.3d 658, 660 (11th Cir. 1998) (stating that "[n]egligent or innocent mistakes do not violate the Fourth Amendment"); *see also Burke*, 784 F.2d at 1092–93 (deciding that a search

performed under a warrant listing the wrong address was nonetheless constitutional when the warrant described the home searched "with sufficient particularity").

While Defendants argue that the search warrant described Whitehurst's home with sufficient particularity as the location to be searched, the Court has no evidence before it supporting Defendants' assertion that Whitehurst's home was in fact the only "tan manufactured home at the end of the road." Furthermore, Whitehurst has pled that Scruggs's residence—the one at the address stated in the warrant—was also a manufactured home and was located only 350 feet away from Whitehurst's residence. Thus, taking the allegations in the complaint as true, Scruggs's home could also match the description in the warrant.[3] The Court cannot determine at this point whether the warrant described Whitehurst's home with "sufficient particularity" as the location to be searched. However, the Court will address the issue again as part of an appropriately filed motion for summary judgment.

Finally, Defendants also contend that any defects with the warrant should be excused because law enforcement had an arrest warrant for Scruggs, and the complaint itself shows that law enforcement had probable cause to believe that

---

[3] *Burke*, which is quoted in Defendants' brief, outlines some of the many factors that are considered when evaluating the effect of a wrong address on the sufficiency of a warrant, including whether the surrounding area contains residences that, putting aside the incorrect address, could also be interpreted as the location to be searched pursuant to the warrant's description. *See Burke*, F.2d at 1092–93.

Scruggs could be found at Whitehurst's home. Defendants point to the conversation that Whitehurst had with Brown and Kelley during which she told them that Scruggs was spending evenings at her mobile home because his power had been disconnected. However, the mere existence of probable cause will not excuse the warrant requirement when searching a third party's home for the subject of an arrest warrant. *See Steagald v. United States*, 451 U.S. 204, 213–14 (1981) (stating that, unless there are exigent circumstances, law enforcement must still obtain a warrant to search a third party's home for the subject of an arrest warrant).

Furthermore, while Defendants argue that Whitehurst's admission that Scruggs was spending nights at her home shows that her residence was the intended location to be searched, this conversation alone does not remove the possibility that the search warrant issued was for Scruggs's home. In fact, even if the Court were to consider the contents of the affidavit supporting probable cause for the warrant (attached to Harris, Concord, Kelley, and Brown's motion to dismiss), the Court could not conclude at this point that the search warrant was actually issued for Whitehurst's home. The affidavit, signed by Brown, states only that law enforcement had reason to believe that evidence concerning the receipt of stolen property and the trafficking of marijuana could be found "stored at the residence of David Michael Scruggs . . . at 11751

Highway 13 . . . which is the residence [where] David Michael Scruggs is known to live." *See* Doc. 13-1, at 6. Nowhere does the affidavit mention the conversation with Whitehurst as a basis for probable cause to believe that Scruggs could be found in a third party's home.

Whitehurst pleads facts sufficient to establish a plausible Fourth Amendment violation. The Court will consider at the summary judgment phase Defendants' argument that the warrant adequately described Whitehurst's home as the location to be searched.

## 2. *Failure to "Knock and Announce"*

Whitehurst also alleges that Defendants Concord and the Jasper Officers committed a Fourth Amendment violation when they failed to knock and announce their presence before entering her home. Whitehurst contends that this failure to knock and announce led to the injury/death of her dogs, since the Defendants' surprise entry into the home prompted the pit bull terriers to attack.

The Fourth Amendment's reasonableness inquiry includes the common law requirement that officers must announce their presence before executing a search warrant. *See Hudson v. Michigan*, 547 U.S. 586, 589 (2006). However, law enforcement may enter a home without first knocking and announcing when officers

arguably have a reasonable suspicion that exigent circumstances exist. *See Richards v. Wisconsin*, 520 U.S. 385, 394 (1997) (stating that "[i]n order to justify a 'no-knock' entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence").

Whitehurst has stated a plausible claim against Concord and the Jasper Officers for unlawful entry based on a failure to knock and announce. She alleges that Defendants entered her home without first announcing their presence. While Defendants argue that "there are times when the knock and announce rule is inapplicable," *see* Doc. 13, at 11, they do not point to any specific circumstances that would justify their failure to knock and announce. Neither the search warrant nor the supporting affidavit indicates dangerous conditions at the home searched: firearms or other weapons are not included in the warrant as items to be seized, and the complaint does not contain facts showing that knocking and announcing would have been futile or led to the destruction of evidence. Furthermore, the mere suspicion of drugs is insufficient to establish reasonable suspicion of exigent circumstances. Rather, law enforcement must offer a case-specific reason for believing that announcing their

presence would be dangerous, futile, or lead to destruction of evidence. *See id.* (reaffirming that there is no blanket exception to the knock-and-announce principal for the execution of search warrants predicated on drug activity; instead, law enforcement must have case-specific reasons to believe that the knock-and-announce requirement may be excused).

Whitehurst states a plausible unlawful entry claim based on a violation of the Fourth Amendment's knock-and-announce rule. However, the Court will consider as part of an appropriately filed motion for summary judgment whether exigent circumstances excused the knock-and-announce requirement.

### 3.    *Qualified Immunity*

Concord and the Jasper Officers further argue that, even if the Court were to decide that Whitehurst's complaint states plausible Fourth Amendment violations, Defendants should be immune from suit due to qualified immunity. An official acting within the scope of his employment is "shielded from suit against him in his individual capacity if, while performing a discretionary function, his conduct did not violate a clearly established right of which a reasonable person would have known." *Chandler v. Sec'y of Fla. Dep't of Transp.*, 695 F.3d 1194, 1198 (11th Cir. 2012) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Whitehurst has conceded that Defendants were

acting within their discretionary authority, and this Court has already determined that the complaint alleges plausible violations of her Fourth Amendment rights. Thus, this Court need only consider whether the rights in question were "clearly established" at the time the alleged violation occurred. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 553 U.S. 194 (2001)); *see also Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199 (11th Cir. 2007) (stating that "[a] motion to dismiss a complaint on qualified immunity grounds will be granted if the complaint fails to allege the violation of a clearly established constitutional right" (internal quotation marks omitted)).

Taking the allegations in the complaint as true, Whitehurst has asserted claims that violate clearly established law. As laid out in Part III(A)(1)&(2), *supra*, there is clearly established law from both the Supreme Court and the Eleventh Circuit concerning failure to obtain a search warrant and failure to "knock and announce" before executing a search warrant. While Concord and the Jasper Officers offer potentially viable defenses, there is currently no evidence before the Court to substantiate those defenses, only Defendants' assertions in the motions to dismiss. While the Court will reconsider the issue of qualified immunity if Concord and the Jasper Officers invoke it at the summary judgment stage, it is not due to be granted at

this time.

### 4.    *Unlawful Seizure Claims*

Whitehurst also alleges that she was unlawfully detained when Concord and the Jasper Officers searched her home, and that eight cellular phones and her two pit bull terriers were seized in violation of the Fourth Amendment. These unlawful seizure claims are largely dependant on the validity of the search warrant. *See Michigan v. Summers*, 452 U.S. 692, 705 (1981) (deciding that, while conducting a search for contraband pursuant to a *lawful* warrant, law enforcement may briefly detain the individuals present, even if those individuals are not suspected of committing a crime). Consequently, these claims are due to survive the Defendants' motions to dismiss.

### B.    Unlawful Search and Seizure Claims Against Brown, Harris, and Kelley

Any claims alleging direct Fourth Amendment violations against those Defendants not present during the search (Brown, Kelley, and Harris) are due to be dismissed. Contrary to Defendants' assertions, there is no longer a "heightened pleading requirement" for § 1983 claims. *See Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010) (concluding that a district court erred in applying a heightened pleading standard to a § 1983 claim, and stating that "[a]fter *Iqbal* it is clear that there is no

'heightened pleading standard' as it relates to cases governed by Rule 8(a)(2)"). However, a complaint still must contain the necessary facts to put Defendants on notice of the claims against them. *See Hamilton v. Allen-Bradley Co., Inc.*, 244 F.3d 819, 825 (2001) (reaffirming that, while a complaint need not outline the elements of a cause of action, it must contain facts sufficient to put defendants "on notice" of the claims against them). Because Whitehurst failed to distinguish between individual Defendants when making allegations in her complaint, the Court cannot articulate a plausible basis for such claims, much less expect defendants to know what personal conduct has subjected them to potential liability. While the Court may reasonably infer that Whitehurst directs her unlawful search and seizure claims at those Defendants alleged to have participated in the search (Concord and the Jasper Officers), the complaint altogether fails to explain how the remaining Defendants committed direct Fourth Amendment violations.

Furthermore, to the extent that Whitehurst intends to allege that Brown purposefully obtained a warrant for a home other than the one he intended to have searched, her allegations fall short of high degree of culpability that must be alleged to establish such a constitutional violation. *See Madiwale v. Savaiko*, 117 F.3d 1321, 1326–27 (11th Cir. 1997) (stating that an official seeking a warrant violates the Fourth

Amendment only when he makes false statements "intentionally or with reckless disregard for the accuracy of the affidavit"). Whitehurst does not allege that Brown intentionally misled the Court in obtaining the warrant. In fact, Whitehurst's complaint does not even allege that Brown obtained the warrant; this Court is aware that Brown was the officer who stated probable cause for the warrant only because Defendants submitted a copy of the search warrant and affidavit with their motion to dismiss. While the complaint states that Brown spoke to Whitehurst at her home before the search occurred, Whitehurst does not allege that Brown told officers to execute the warrant at a home other than that listed in the warrant; nor does the complaint allege that Brown knew that the warrant would be executed on the wrong home.[4]

---

[4] Again, because Whitehurst's complaint refers to Defendants collectively, this Court cannot be certain that Whitehurst even intended to allege a direct claim against Brown. Other than the allegations that Brown talked to Whitehurst about Scruggs's living arrangements and that Brown is a "final policymaker" for the purposes of supervisory liability, Whitehurst's complaint is silent with respect to Brown. While Whitehurst's response brief states that "[t]he officer who obtained the warrant (Wes Brown) knew that [the home searched] was not the residence of David Scruggs]," and "you cannot obtain a warrant for one person's residence and execute it on a residence you know that he does not own," *see* Doc. 21, at 7, 9, those allegations are not in the complaint and still do not make clear that Whitehurst alleges that Brown directed officers to search a home other than the one he obtained a warrant for. Furthermore, elsewhere in the response brief Whitehurst suggests that the potential error lies solely with the search team. *See id.* at 9 ("The defendants could have easily avoided this 'mistake' by contacting [the utility company] to see who paid the power bill at 11755 [i.e., Whitehurst's home]. Or they could have done a google earth search, which would have shown the correct locations for the different addresses. Or the defendants could have paid attention to their warrant (11751) vs. the house number in plain view on Tammy Whitehurst's mobile home (11755)").

Whitehurst's complaint alleges only that the search team (Concord and the Jasper Officers) searched Whitehurst's home under a warrant issued for another residence. This Court will not interpret the complaint to allege direct Fourth Amendment violations against the remaining Defendants when no facts supporting them have been pled.

### C.     Failure to Intervene Claim

Whitehurst also argues that, to the extent that Defendants did not directly violate her Fourth Amendment rights, they "stood by without intervening" to stop the alleged constitutional violations. However, this Court is doubtful that the Eleventh Circuit recognizes "failure to intervene" claims outside of the context of the Eighth Amendment's excessive force prohibition. *See Jones v. Cannon*, 174 F.3d 1271, 1285–86 (11th Cir. 1999) (refusing to extend "failure to intervene" liability to the unlawful arrest context). Even if Whitehurst did plead viable failure to intervene claims, Defendants would be entitled to qualified immunity on this issue. *See Livers v. Schenck*, 700 F.3d 340, 360 (8th Cir. 2012) (summarizing the current viability of "failure to intervene" claims in federal court, and stating that "[t]hough other circuits have recognized a duty to intervene outside the excessive force context, the Eleventh Circuit refused to find a clearly established duty to intervene to stop other

constitutional violations" (citing *Jones*, 174 F.3d, at 1286) (internal citations omitted)).

Finally, Whitehurst does not discuss the "failure to intervene" claim in her response brief, despite Defendants' opposition to the claim in their own briefs. Refusing to acknowledge a contested claim in a response brief is a ground for dismissal. *See Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1325–26 (11th Cir. 2000) (noting that an appellant's "failure to brief and argue [an] issue during the proceedings before the district court is grounds for finding the issue abandoned").

### D.    "Supervisory Liability" Claims Against Harris and Brown

Whitehurst also brings claims against Harris and Brown, alleging that they were "final policymakers" in charge of setting the policy for entering homes during warrant executions, and that they are therefore liable for the damages resulting from the "no-knock" entry performed by the other officers. Defendants interpret this as a supervisory liability claim against Brown and Harris. Since Whitehurst does not dispute this characterization in her response brief, the Court will also consider the claim in question a supervisory liability claim, despite the fact that the term "final policymaker" is relevant only when the plaintiff seeks damages from local

governmental entites, rather than from government officials in their individual capacities.[5]

An official may be liable in a supervisory capacity under § 1983 when there is a causal connection between his subordinates' unconstitutional conduct and the official's own actions. *Harper v. Lawrence Cnty., Ala.*, 592 F.3d 1227, 1236 (11th Cir. 2010). Other than personal participation on behalf of the defendant, the plaintiff may establish the necessary causal connection by showing (1) that there was "a history of widespread abuse," thereby putting the supervisor on notice of the constitutional violation; (2) that the supervisor imposed "a custom or policy . . . resulting in deliberate indifference to constitutional rights"; or (3) that the supervisor "directed the subordinates to act unlawfully or knew [they] would act unlawfully and failed to stop them from doing so." *See id.* (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360–61 (11th Cir. 2003)).

Whitehurst's complaint does not indicate a history or pattern of constitutional

---

[5] The complaint states that Harris and Brown are being sued only in their individual capacities, but then alleges that they are "final policymakers." The term "final policymaker" is applicable only when governmental officials are sued in their *official* capacities in an effort to impose liability against a government entity. *See, e.g.*, *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 785 (1997) (stating that "[o]ur cases on the liability of local governments under § 1983 instruct us to ask whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue"). Again, this Court reads the complaint as alleging a supervisory liability claim, since Whitehurst does not dispute such a characterization.

violations sufficient to put supervisors on notice. *See Black v. City of Mobile*, 963 F.

Supp. 2d 1288, 1304 (S.D. Ala. 2013) (refusing to impose supervisory liability for an

alleged Fourth Amendment violation, and stating that the alleged pattern of violations

must be "'obvious, flagrant, rampant, and of continued duration, rather than isolated

circumstances'" (quoting *Braddy v. Fla. Dep't of Labor and Emp't Sec.*, 133 F.3d 797,

801–02 (11th Cir. 1998))). Whitehurst also fails to allege facts showing that Harris or

Brown instituted a "custom or policy" leading to the deliberate indifference of Fourth

Amendment Rights. Other than the conclusory remark that Brown and Harris are

"final policymakers," the complaint contains no discussion of the Winston County

Sheriff's Office's policy or custom when executing search warrants.

Whitehurst also does not allege facts showing that either Harris or Brown

"directed subordinates" to enter without announcing or "knew subordinates would

commit [a no-knock violation]" and "failed to stop them from doing so." Finally,

Whitehurst does not defend the supervisory liability claim in her response brief,

despite the fact that Defendants contested the claim in their own briefs. As stated

previously, *see supra* Part III.C, failure to defend a contested claim is a ground for

granting dismissal. *See Coal. for the Abolition of Marijuana Prohibition*, 219 F.3d at

1325–26 (noting that an appellant's "failure to brief and argue [an] issue during the

proceedings before the district court is grounds for finding the issue abandoned").

### E.    Defendants Harris, Brown, Kelley, and Concord's Motion to Stay Proceedings

Defendants Harris, Brown, Kelley, and Concord filed a motion to stay proceedings in this case pending outcome of any constitutional challenges to the warrant that might arise during Scruggs's ongoing criminal proceedings. This motion is due to be denied for several reasons. First, criminal proceedings against Scruggs related to this matter are not earnestly "ongoing," despite the fact that the search warrant was executed over two years ago. According to Defendants, Scruggs has not yet been charged and is still awaiting indictment. In addition, there is uncertainty as to whether Scruggs will even have standing to challenge the execution of a warrant on his sister's home. *See generally* Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 11.3(b) (5th ed. 2014)(collecting cases where courts have decided whether a criminal defendant has standing to challenge a warrant executed on a third party's home, and emphasizing that a defendant has standing to challenge violations of only his own rights).

Finally, the Court considers Defendants' interpretation of *Heck v. Humphrey*, 512 U.S. 477 (1994), to be too broad. Defendants argue that *Heck* requires that this matter be stayed until state criminal proceedings are finished. However, *Heck* stands

only for the proposition that a convicted criminal defendant may not bring a § 1983 claim asserting wrongful conviction where that defendant has not first "reversed, expunged, invalidated, or impugned" the conviction itself through direct or collateral appeal. *See Heck*, 512 U.S. at 489. While *Heck* is concerned with state-federal comity in the context of § 1983 claims, it does not in itself dictate that courts stay a third party's § 1983 suit whenever the defendant still faces the prospect of criminal proceedings in state court.

## IV.   CONCLUSION

For the reasons stated above, Defendants Concord, Harris, and Brown's motion to dismiss (Doc. 12) and the Jasper Officers' motion to dismiss (Doc. 14) are due to be granted in part and denied in part, while Kelley's motion (Doc. 22) is due to be granted in full.

Concord's motion to dismiss (Doc. 12) is due to be denied with respect to the unlawful entry, search, and seizure claims against him. The motion is due to be granted for all other claims against Concord. All claims against Harris and Brown are due to be dismissed. The Jasper Officers' motion (Doc. 14) is due to be denied for the unlawful entry, search, and seizure claims. The Jasper Officers' motion is due to be granted for all remaining claims. Defendants Brown, Harris, Kelley, and Concord's

motion to stay (Doc. 23) is due to be denied. Finally, Brown, Harris, and Kelley are

due to be dismissed from this action, since no claims against them remain.


A separate Order will be entered.

Done this 6th day of January 2015.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
177822